UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BULK TRANSPORT CORP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-399-PPS |
| ) | |
| TEAMSTERS UNION NO. 142 PENSION ) | |
| FUND and TRUSTEES OF THE TEAMSTERS ) | |
| UNINON NO. 142 PENSION FUND ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

In March 2023, I granted summary judgment in favor of Defendants Teamsters Union No. 142 Pension Fund and Trustees of the Teamsters Union No. 142 Pension Fund and against Plaintiff Bulk Transport Corp. [DE 38.] Plaintiff appealed. On April 30, 2024, the Seventh Circuit issued its mandate reversing and remanding my prior opinion with instructions that I order Defendants to repay the withdrawal liability they collected from Plaintiff. [*See* DE 55.] Following the Seventh Circuit's remand, I ordered briefing on the question of the amount of withdrawal liability Defendants owe Plaintiff. [DE 56.] That issue having now been fully briefed, I hereby ORDER Defendants to pay Plaintiff a withdrawal liability assessment of $1,979,085.40, accrued interest of $2,045,810.08, additional per day interest of $549.75 from July 1, 2024, through the date of payment, and costs of $1,428.70.

### Discussion

Given my prior lengthy summary judgment opinion from March 2023, I assume

1

background knowledge of the facts of this case for purposes of this opinion. That said, I will discuss certain aspects of the withdrawal liability issue in the context of my evaluation of Plaintiff's request for attorney fees below.

## I. The Total Amount of Withdrawal Liability and Interest Owed

The issue of repayment of the withdrawal liability Defendants owe Plaintiff contains two components: (1) the total amount of withdrawal liability owed; and (2) the amount of interest owed on that withdrawal liability figure. The Parties are in near complete agreement on these two components. As to the first component, the Parties agree that Defendants must refund $1,979,085.40 in withdrawal liability that they collected from Plaintiff.

Turning to the amount of interest owed, it is first helpful to establish the harm that Plaintiff suffered that the interest payment will make whole. Plaintiff seeks not only to be compensated for the total amount in withdrawal liability now determined to be overpaid, component one that I discussed above, Plaintiff also seeks compensation for the lost opportunity cost of not having access to the total sum of money that Plaintiff overpaid during the period in question. As Plaintiff notes, the Supreme Court has "consistently acknowledged that a monetary award does not fully compensate for an injury unless it includes an interest component." *Kansas v. Colorado*, 533 U.S. 1, 10 (2001). In the context of withdrawal liability, federal regulations direct that "the plan sponsor shall refund the overpayment, with interest, in a lump sum." 29 C.F.R. § 4219.31(d).

The Parties agree that Plaintiff is entitled to 10% annual interest. This is

consistent with federal regulations concerning overdue and defaulted withdrawal liability, which sets the interest rate for refunds at "the same rate as the rate for overdue withdrawal liability payments." C.F.R. § 4219.31(d). But while they agree on the 10% per annum interest rate, the Parties differ in their application of this rate.

Defendants argue that they owe a total of $2,037,642.12 in interest plus a daily rate of interest after July 1, 2024, of $549.75. [DE 64 at 6.] Plaintiff in their opening brief seeks an interest payment of $2,048,661.59, or, as put forth in their reply, a compromise sum of $2,045,810.08. [DE 65 at 2.] Plaintiff agrees with the daily interest rate of $549.75 for each day after July 1, 2024. Given that both Parties agree upon the daily interest rate figure of $549.75, I will adopt this figure for interest due after July 1, 2024.

The Parties' different interest calculations stem from rival methods to account for the fact that Plaintiff did not always make payments to the withdrawal liability fund on the first of the month. For months when payment occurred after the first day of the month, Defendants argue that Plaintiff should not be entitled to a full month's worth of interest because Plaintiff had possession of those funds up until the date that Plaintiff paid them into the fund. Thus, according to Defendants, calculating interest on a per month basis results in the overpayment of interest because it compensates the Plaintiff for days that it had not yet paid Defendants and still had access to the money it eventually paid. Instead, Defendants prefer to prorate the 10% annual interest rate figure at 0.02778% per day for each day after Plaintiff made a payment into the fund. [*See* DE 64-1, DE 64-2.]

In its initial brief, Plaintiff calculated the interest rate using a prorated 0.833%

per month figure, which resulted in the $2,048,661.59 figure. [*See* DE 59-4, DE 59-5.] In Reply, Plaintiff proposes an alternative interest rate calculation that applies a hybrid of the 10% per annum interest rate for full years and the prorated daily interest rate of 0.02778% (upon which the Parties agree). [DE 65 at 2.] Plaintiff calculated this alternative interest sum to be $2,045,810.08.

I find Plaintiff's compromise calculation to be reasonable in light of the Parties joint agreement on the use of the prorated daily interest rate. Accordingly, I order Defendants to pay Plaintiff $2,045,810.08 in interest plus an additional daily rate of $549.75 for each day after July 1, 2024, until Defendants make their payment to Plaintiff. Use of this agreed upon per day interest figure is a logical extension of the prorated 0.83% per month interest figure courts in this district have previously awarded. *See Trs. of Teamsters Union Local No. 142 Pension Trust Fund v. Enter. Trucking & Waste Hauling, Inc.*, No. 2:07cv433, 2009 WL 301915, at *6 (N.D. Ind. Feb. 6, 2009).

## II.     Attorney's Fees

I now turn to the crux of the Parties' disagreement concerning Plaintiff's request that I award Plaintiff $217,249 in attorney's fees. Plaintiff states that this figure represents its fees in the litigation before this Court and before the Seventh Circuit on appeal.

In this circumstance, withdrawal liability governed by ERISA and the Multiemployer Pension Plan Amendment Act ("MPPAA"), whether to award attorney's fees is a matter of my discretion. *See* 29 U.S.C. § 1451(e) ("In any action under this section, the court *may* award all or a portion of the costs and expenses

incurred in connection with such action, including reasonable attorney's fees, to the prevailing party.") (emphasis added). The prevailing party in an ERISA action under § 1451 is "ordinarily entitled to an award of fees 'unless the loser can show that its position was 'substantially justified.'" *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 768 (7th Cir. 2018) (internal citation omitted). To be "substantially justified", a party's position must have been "something more than non-frivolous, but something less than meritorious—and taken in good faith." *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011).

Defendants' primary litigation position in this suit was that while the Steel Mill Addendum did not expressly cover the LISCO work, Plaintiff's conduct modified the original agreement to include the LISCO work. To justify its request for attorney's fees, Plaintiff argues that the lack of case law directly on point to support Defendants' position, the Seventh Circuit's comments at oral argument and in its opinion reversing my prior opinion in Defendants' favor, and Defendants' sophistication in litigating federal pension law all demonstrate that Defendants' position was "unsound from its inception." [DE 59 at 18.] Defendants counter that their success before the arbitrator (twice) and before this Court originally demonstrates that their litigation position was in fact substantially justified. [DE 64 at 10.]

I agree with Defendants' argument that their position was substantially justified and decline to award Plaintiff discretionary attorney's fees. I am not persuaded by Plaintiff's argument that the lack of direct authority in support of Defendants' position inevitably means that Defendants pursued an unsound litigation position from the

5

outset. As I noted in my prior opinion, this was a case of first impression: "There was no case law precisely on point with the facts and circumstances of this case to answer the question whether Bulk, by its conduct, adopted the CBA that supported the withdrawal liability assessment." [DE 48 at 3.]

In the original proceedings before me, both Plaintiff and Defendants put forth strong arguments concerning Defendants' adoption-by-conduct theory. Defendants' theory relied upon a series of "adoption cases" in which the Seventh Circuit held that an employer's course of conduct could, in certain circumstances, adopt the terms of a collective bargaining agreement. *See, e.g.*, *Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.* ("*LINECO*"), 591 F.3d 576 (7th Cir. 2010). On the other hand, Plaintiff put forth a similarly strong argument that the strict terms of collective bargaining and contribution agreements control, regardless of the employer's conduct. *See Central States v. Joe McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994). This argument eventually won the day.

The Seventh Circuit has recognized that district court judges are well within their authority to deny attorney's fees when confronted by cases of first impression with well-crafted arguments on either side. *See Central States, Southeast and Southwest Areas Pension Fund v. Sherwin–Williams Co.*, 71 F.3d 1338, 1343 (7th Cir. 1995) ("The district court concluded that [the losing party's position was substantially justified], because this is a case of first impression with decent arguments on each side. That assessment strikes us as sensible; certainly it is not an abuse of discretion."). That the Seventh Circuit ultimately decided this question in Plaintiff's favor does not

automatically transform Defendants' previously successfully litigation position into a meritless one.

### III.  Costs

Defendants do not contest Plaintiff's costs, which total $1,428.70, so I will adopt this agreed upon amount into this final order.

## Conclusion

For the aforementioned reasons, Defendants Teamsters Union No. 142 Pension Fund and Trustees of the Teamsters Union No. 142 Pension Fund are **ORDERED** to pay Plaintiff Bulk Transport Corp the withdrawal liability assessment of $1,979,085.40, with accrued interest of $2,045,810.08, additional per day interest of $549.75 from July 1, 2024, through the date of payment, and costs of $1,428.70. The Clerk is directed to enter **FINAL JUDGMENT** stating that Plaintiff is entitled to the relief ordered herein. The Clerk is further directed to treat this matter as **TERMINATED**.

**SO ORDERED**.

ENTERED: August 20, 2024.

s/ Philip P. Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT